IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2006

**COLICO WALLS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
No. P-26822   James C. Beasley, Jr., Judge**

_____

**No. W2005-02211-CCA-R3-PC  - Filed September 18, 2006**

_____

The petitioner, Colico Walls, was convicted by a jury of attempted aggravated robbery. His conviction was affirmed on appeal by this Court. See State v. Colico Walls, No. W2000-03008-R3-CD, 2001 WL 1381261 (Tenn. Crim. App., at Jackson, Nov. 7, 2001). The petitioner filed a pro se petition for post-conviction relief. After counsel was appointed to represent the petitioner, three amended petitions were filed. The post-conviction court denied post-conviction relief after an evidentiary hearing. The petitioner appeals the judgment of the post-conviction court. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLILAMS, JJ., joined.

Britton J. Allan, Memphis, Tennessee, for the appellant, Colico Walls.

Paul G. Summers, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts surrounding the petitioner's underlying conviction were summarized by this Court on direct appeal as follows:

Sometime between 9:30 and 10:00 P.M. on December 2, 1998, the victim, Joyce Wright, stopped her vehicle at a Citgo service station in Memphis to use the pay telephone. Through her rearview mirror, the victim observed a person she later identified as the defendant as he walked along the sidewalk about one-half to one

block away. As she was talking on the phone, the defendant placed a "ten-inch . . . rusty butcher knife" at her throat and said, "Hey, pretty lady, hang it up." After struggling with the defendant for the telephone, the victim remarked, "Jesus does not want you to do this." When the defendant ordered her to "hang up the damn phone and scoot over," the victim escaped from the passenger side of the vehicle and ran to a nearby Amoco station.

After her escape, the victim watched as the defendant yelled at a truck driver, "Do you want some of this too?" The defendant waved his knife as he made the statement. When the defendant left the scene, the victim returned to her car and did not initially find anything missing. Later, she noticed that two compact discs were missing from her vehicle. Some two months later, the victim identified the defendant from a photographic display prepared by Sergeant Jeff Polk of the Memphis Police Department. The victim recalled that the defendant was thin and unshaven and, during the robbery, bit his lip. In the photographic display, the defendant was biting his lip.

When Officer Clifton Dupree attempted to arrest the defendant on February 6, 1999, the defendant "turned and swung with his elbow and hit [Dupree] in the chest and attempted to run." Even after Officer Dupre's partner assisted in restraining the defendant, the defendant continued to struggle for several minutes, ripping off Officer Dupree's shirt and ripping the cord out of his radio in an attempt to get away. Other officers had to be called in to assist with the arrest.

Sergeant Jeff Polk prepared the photographic display which included a picture of the defendant. According to Sergeant Polk, he included photographs of other "persons of similar body sizes, skin complexions, [and] ages . . . ." At trial, Sergeant Polk testified that the victim identified the defendant without hesitation and expressed certainty that the defendant was her assailant. Although the defendant did not testify, it was stipulated that he was six feet, one inch in height.

The defendant claims the evidence is insufficient based primarily upon the victim's uncertainty as to his height. When asked on cross-examination to estimate the height of the defendant, the victim answered, "Five-five-I know he was five-ten, five-eleven, a little . . . tall, maybe my height [of five feet, eight inches]." When asked again to estimate his height, the victim answered, "An average height. Anywhere from, I would say five eight . . . to five eleven is average, probably five-ten. I don't know exact height. I was sitting down in the truck, and he was standing, so . . . it's hard to say."

State v. Colico Walls, No. W2000-03008-CCA-R3-CD, 2001 WL 1381261, at *1 (Tenn. Crim. App., at Jackson, Nov. 7, 2001). This Court affirmed the petitioner's conviction, finding that the evidence was sufficient to support the jury's decision. Id. at *2.

On October 8, 2002, the petitioner filed a pro se petition for post-conviction relief. Three amended petitions for post-conviction relief were filed after counsel was appointed to represent the petitioner. The petitioner claimed that he received ineffective assistance of counsel at trial.

### Evidence at the Post-conviction Hearing

The post-conviction court held a hearing on the petition for post-conviction relief in August of 2005. At the hearing, the petitioner testified that he only met with trial counsel a few times prior to trial and that their conversations were very brief. The petitioner also acknowledged that he met with trial counsel prior to most of his court dates and admitted that he had five or six court dates. The petitioner stated that trial counsel met with him at the jail on more than one occasion, but that he could not recall exactly how many times he met with trial counsel.

The petitioner testified that trial counsel discussed the charges and the eyewitness testimony and provided him with a copy of the discovery. However, the petitioner complained that instead of discussing the defense, trial counsel was preoccupied with discussing the ongoing plea negotiations with the State.

The petitioner remembered that trial counsel showed him a picture of a photographic lineup and discussed with him the fact that the petitioner was biting his lip in the picture. The petitioner recalled that trial counsel filed a motion to suppress the lineup, but admitted that the motion was not based on the fact that the petitioner was biting his lip. The motion was instead based on the color of the petitioner's skin as compared to the other individuals in the lineup. The petitioner remembered trial counsel talking to him about the motion to suppress, but claimed that he did not understand exactly what the motion was intended to accomplish.

At the hearing on the motion to dismiss, the petitioner admitted that he agreed with trial counsel that the motion should be withdrawn. The petitioner stated that he initially thought the lineup should have included "the picture that [he] was processed in jail with" and not a picture from "a car incident" where his face as scarred up and he was wearing a hospital suit. However, the petitioner agreed that he wanted to drop the motion to suppress after he realized there was not as big a difference in the pictures as he originally perceived.

The petitioner also claimed that there were several witnesses, including responding officers and individuals working at the gas station on the day of the offense, that trial counsel did not interview. The petitioner complained that trial counsel had an investigator speak with the victim rather than interviewing her himself, and that trial counsel did not even interview Sergeant Polk at all. The petitioner also claimed that the handwriting on the photographic lineup did not belong to the victim and that trial counsel failed to cross-examine Sergeant Polk about the handwriting. The petitioner also thought that trial counsel should have presented Tamika Swift as an alibi witness. However, the petitioner later conceded that Ms. Swift was not willing to give the petitioner an alibi for the evening of the incident.

In summarizing the level of representation that he received from counsel, the petitioner stated that trial counsel "didn't build me any kind of defense, whatsoever." The petitioner claimed that his "M.O." did not fit the description of the person that committed the crime. He stated that the offender used a knife, and that he had never used a knife against anyone. The petitioner acknowledged that the victim identified him as the perpetrator, but claimed that she did so only because he was biting his lip in the lineup picture. Finally, the petitioner argued that he was improperly sentenced as a Range III offender[1].

Trial counsel testified that he began to practice law in 1991 and that he worked with the Public Defender's Office for three or four years before starting a private practice. He indicated that he had taken ten or twenty criminal cases to trial prior to the petitioner's. Trial counsel also represented the petitioner in several other cases at the time the robbery case was pending.

Trial counsel recalled meeting with the petitioner on several occasions, but could not pinpoint the exact number of visits. He remembered discussing the case in detail with the petitioner, including the allegations against him and the eyewitness testimony. Trial counsel stated that his normal practice was to give each defendant a copy of the discovery in their case.

Trial counsel admitted that he did not meet with the victim prior to trial. However, trial counsel explained that as a matter of course, he had the investigator for the public defender's office speak to all of the witnesses so that he did not become a potential witness in the case. Trial counsel doubted that the investigator spoke to any of the officers involved in the case. Trial counsel normally received a written summary of each interview from the investigator. Trial counsel did not recall contacting the victim's boyfriend, with whom she was on the phone at the time of the robbery.

Trial counsel testified that he filed a motion to suppress the photographic lineup in the case based on the petitioner's skin tone. The motion was withdrawn with the consent of the petitioner when the original photo spread was observed in which the color of the photographs was more accurate. Trial counsel explained the withdrawal of the motion to the petitioner. Trial counsel remembered that the petitioner appeared to be biting his lip or smiling in the photograph, but that he did not think that presented a sufficient basis for suppression. According to trial counsel, the victim identified the petitioner based on the fact that he was biting his lip in the picture as well as other reasons.

According to trial counsel, the petitioner claimed that he did not commit the crime and that he had an alibi. However, the trial came down to witness identification. Trial counsel recalled cross-examining the victim and several of the officers. Trial counsel stated that ultimately, the jury found the petitioner guilty of a lesser-included offense.

At the sentencing hearing, trial counsel indicated to the trial court that two of the petitioner's prior convictions were pending on appeal. Trial counsel stated at the post-conviction hearing that

---

[1]The petitioner does not raise this issue on appeal.

he probably counted all of the petitioner's prior felonies in the presentence report for which the trial court sentenced the petitioner as a Range III offender. Trial counsel could not specifically recall whether he objected to the trial court utilizing an offense that the petitioner committed while a juvenile.

At the conclusion of the hearing, the post-conviction court denied relief. The post-conviction court then entered an order denying post-conviction relief. The petitioner filed a timely notice of appeal. On appeal, the petitioner argues that the post-conviction court improperly denied the petition for post-conviction relief.

## Analysis

## Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Shields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates

against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the case herein, the petitioner claims that trial counsel was ineffective for failing to adequately investigate the case and by failing to file a motion to suppress the photographic lineup. Specifically, the petitioner contends that trial counsel did not interview witnesses and withdrew the motion to suppress the photographic lineup prior to trial.

At the conclusion of the hearing, the post-conviction court made the following findings of fact and conclusions of law:

> As to the allegation of ineffective assistance of counsel. It appears to the court, again, that this is strictly a classic jury question of identification. The defendant says I didn't do it, the victim says, that's the guy that did it. And it's strictly an ID issue.
>
> I think, in reviewing the transcript, it's apparent that this lady testified that she was sitting in her car on [sic] a parking lot of a service station on the telephone, she saw [the petitioner] walk by, then the next thing she knows he's back on top of her attempting to rob her with a knife. And she testified as to her ability to see him.
>
> She testified and was thoroughly cross-examined not only about her physical condition but about the lighting and there was a lot of questioning about the lights going out on one service station and not in the other, her ability to see the defendant and the way that she described him.
>
> And it's apparent to the court in reviewing the transcript that [trial counsel] attacked her credibility as far as her ability to make an identification under all the circumstances. And again, the key factors are going to be her length of time she was able to see the defendant, under what circumstances. And I think there was testimony about a struggle. And the knife, she was able to give a description of the knife. I know there was even some question about it being a rusty knife. And she goes into detail about how she was able to see or know that it was a rusty knife.

-6-

But anyway, it's apparent to the court that the whole case rose and fell with this lady's identification. And it's apparent to the Court, again, that [trial counsel] thoroughly cross-examined her and put before the jury her credibility and her ability to make an identification. And I think that's all that he could do.

The statement that's been made to the Court and it was testified to was a review of the alibi, potential alibi witness was that she was not going to be an alibi. That she could not alibi [the petitioner] for the time of the offense and so there was no basis for putting her on.

[Trial counsel] testified that he had met with the defendant on numerous occasions, had discussed the case with him. [The petitioner] was aware of his situation as far as sentencing, potential sentence. He was aware of offers. He refused to accept an offer and wanted to go to trial and the matter was tried. It's apparent that the Public Defender's Office investigated the case for [trial counsel]. And I really, frankly, don't know a whole lot more that he could had [sic] done had he personally interviewed the lady versus have his investigator interview her. Again, the whole case rose and fell with the identification.

The issue on the motion to suppress there's not enough in front of me and I don't, you know, I - - there's no basis for me to determine that the identification was based strictly on the photograph that was used in the photo lineup where it appears [the petitioner] has got his lip tucked in. Whether you call that biting your lip or not. But that issue was cross-examined. This lady was cross-examined about that by [trial counsel] and she testified that that was not the basis for her identification. and she testified that she identified [the petitioner] because of the way he looked. And that the lip biting there was some issue brought up about the lip biting but she testified that that had some influence on her in her identification but she was cross-examined and questioned and indicated that he identification was based upon his appearance and not on the lip biting. But she did note that and [trial counsel] noted it and cross-examined her about it.

And, frankly, I think in light of all the testimony, that it - - there is not a basis for suppressing the identification in the case. And as a result I think that [trial counsel] properly cross-examined her with regard to that. And, again, I think there are issues that a jury needed to determine. I mean, this is one of those classic jury questions whether they believed the victim and her identification of a photograph and then her subsequent identification of the defendant in the courtroom. Or, you know, the defense theory that I wasn't there. And [the petitioner] chose not to take the witness stand to put that forth. But the issue was before the jury that it was strictly an ID question and the jury obviously weighed and listened to all the evidence and returned a verdict of a lesser included charge which always gives this Court an indication that the jury is listening to instructions and following the law and weighing

the evidence and, you know, found in favor of the State's theory of the case but to a lesser degree.

So I'm satisfied that [trial counsel] did an adequate job under the law that was required of him in representing [the petitioner]. That he did get effective representation in this particular case. And that I find there is no proof before me that would cause me to find that he did not receive effective representation. And if in fact there were any minor discrepancies, I don't find that they would arise to the fact that it would cause a jury to have returned a verdict different than the verdict that was returned in the case. I just don't find that there's a basis for post-conviction relief in this matter. And for those reasons I will deny the petition for post-conviction relief.

The record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court did not accept as credible the testimony of the petitioner. In fact, the post-conviction court accredited the testimony of trial counsel. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). As stated previously, this Court affords the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. After a de novo review, we conclude that the evidence in the record does not preponderate against the post-conviction court's decision that trial counsel was effective. The petitioner has failed to satisfy his burden. Thus, we affirm the judgment of the post-conviction court.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

-8-